Walker G. Harman, Jr. [WH-8044]
LAW OFFICE OF WALKER G. HARMAN, JR.
20 Exchange Place, 43rd Floor
New York, New York 10005
(212 425-2600
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

DEBORAH ARENA,

                        Plaintiff,

      -against-

GOLDBERG, WEPRIN & USTIN LLP
and STEVEN UFFNER,

                        Defendants.
-------------------------------------------------------------------------X

Civil Action No:

**COMPLAINT**

**PLAINTIFF HEREBY**
**DEMANDS A TRIAL**
**BY JURY**

      Plaintiff, Deborah Arena, by her attorney, Walker G. Harman, Jr., as and for her complaint against Defendants, alleges as follows:

**PARITES, JURISDICTION AND NATURE OF ACTION**

      1.     Plaintiff, Deborah Arena, is a citizen of the State of New York residing in Queens County, was subject to ongoing sexual harassment and was illegally terminated in retaliation for refusing to engage in a sexual relationship with Defendant, Steven Uffner.

      2.     Defendant, Goldberg, Weprin & Ustin, LLP (the "Goldberg Firm") is a limited liability partnership duly authorized to do business in New York, located at 1501 Broadway, 22nd Floor, New York, New York 10036.

      3.     Defendant, Steven Uffner ("Defendant Uffner"), Plaintiff's direct supervisor, is a member of the Goldberg Firm and, upon information and belief, resides in the State of New York.

4. Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission dated March 10, 2006.

5. Plaintiff was unlawfully terminated on June 24, 2005 in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII").

6. During the tenure of Plaintiff's employment, Defendant Uffner, a member of the firm attempted on numerous occasions to engage Plaintiff in an inappropriate sexual relationship. Because Plaintiff was unwilling to comply with Defendant Uffner's demands, she was ultimately terminated in retaliation for refusing to reciprocate Defendant Uffner's sexual advances.

7. This action seeks compensatory and punitive damages for Defendant's violations of Title VII of the Civil Rights Act, New York City Administrative Code § 8-502(a), *et. seq.* and New York Executive Law § 296, *et. seq.*

8. Venue is properly laid in this Court in that the unlawful conduct giving rise to this Complaint occurred within the County of New York.

**BACKGROUND**

**I.**

9. Plaintiff, Ms. Arena, was employed as a legal secretary by the Goldberg Firm for five (5) years from May 2000 until June 2005.

10. At the commencement of her employment she was given a salary of approximately $48,000 per year having already acquired over eighteen (18) years of secretarial experience.

11. During Ms. Arena's five-year tenure with the Goldberg Firm, she was a diligent worker and always received positive feedback, which commended Ms. Arena for her hard work and dedication to the firm.

12. Ms. Arena only ever received the maximum bonus allocated for her level of employment. In addition, the Goldberg Firm rewarded her efforts by increasing her salary by $2,500 each year.

13. During Ms. Arena's tenure with the Goldberg Firm, she was assigned to work for Defendant Uffner, a member of the firm.

14. In spite of Ms. Arena's excellent work performance, she was unlawfully terminated on June 24, 2005 for repeatedly refusing to engage in an inappropriate sexual relationship with Defendant Uffner.

15. The Defendants' were at all times aware of Ms. Arena's civil rights yet deliberately disregarded them.

16. Defendant Uffner was responsible for making decisions about Ms. Arena's employment as her direct supervisor and used his superior position to intimidate Ms. Arena.

17. Defendant Uffner knew that his advances toward Ms. Arena were inappropriate. Nevertheless, Defendant Uffner continued to sexually harass Ms. Arena even though she refused to reciprocate his sexual advances.

18. When Ms. Arena finally expressly and repeatedly refused Defendant Uffner's advances, Defendant Uffner became so frustrated that he retaliated against Ms. Arena by illegally terminating her.

19. Upon information and belief, Defendants' actions were done maliciously and/or in reckless disregard for Plaintiff's civil rights.

## SEXUAL HARRASSMENT

## II.

20. During her time at the Goldberg Firm, Defendant Uffner, Ms. Arena's direct supervisor, attempted on numerous occasions to engage her in a relationship that was both inappropriate and outside the scope of her job duties.

21. More specifically, Defendant Uffner desired to have a sexual and romantic relationship with Ms. Arena. Ms. Arena is a married and never has been willing to engage in an adulterous relationship with Defendant Uffner or anyone else.

22. Ms. Arena was subject to a hostile work environment involving repeated sexual harassment over an extended period of time.

23. As examples of the sexual harassment Ms. Arena endured:

   i. Defendant Uffner tried to kiss Ms. Arena on several occasions in the conference room, and each time she turned her back ignoring his advances;

   ii. Defendant Uffner made comments such as "If you ever leave me I will ruin your career;"

   iii. Defendant Uffner would touch Ms. Arena in a suggestive manner (i.e. would lean all over her back in an inappropriate and sexual manner when she was sitting typing correspondence, which was very uncomfortable);

   iv. Defendant Uffner suggested that Ms. Arena get a divorce so that she could be with him, and she ignored his comment;

   v. When Ms. Arena was sitting typing, Defendant Uffner would come and whisper instructions, even though there was no reason for him to behave in this secretive manner;

   vi. Defendant Uffner would stare at Ms. Arena in a seductive manner from his desk for long periods of time;

   vii. Defendant Uffner would constantly question Ms. Arena on a daily basis concerning such things as her lunch plans (i.e. where and with whom she was going);

       viii.    When Ms. Arena had to go into his office, Defendant Uffner would stare at her in a suggestive manner (i.e. his eyes would travel up and down her body);

24. The sexual harassment was repeated and ongoing until the day of her illegal termination.

25. Even though Defendant Uffner's advances were unwelcome and made her feel uncomfortable, Ms. Arena was unable to complain for fear Defendant Uffner would retaliate against her.

26. Moreover, there was no sexual harassment policy at the firm and no individual to complain to except Defendant Uffner, the individual who was sexually harassing Ms. Arena.

**RETALIATION**

**III.**

27. Although out of fear Ms. Arena initially ignored, for a period of time, Defendant Uffner's advances, she did finally clearly, expressly and repeatedly reject Defendant Uffner's advances by plainly stating that she would not engage in a sexual or romantic relationship.

28. When Ms. Arena finally expressly refused Defendant Uffner's advances, his attitude toward her changed.

29. Throughout the next several months Ms. Arena continued to hold her ground repeatedly stating that she had no interest in any type of inappropriate and/or sexual relationship.

30. Finally, Defendant Uffner became so frustrated that he retaliated against Ms. Arena by illegally terminating her on June 24, 2005.

31. When Defendant Uffner terminated Ms. Arena, the reason given was "We don't mesh". When Ms. Arena confronted him at this time he reiterated again "We don't mesh."

32. No criticism was ever given to Ms. Arena regarding her work performance by Defendant Uffner or anyone else at the firm.

33. Ms. Arena was regularly made to feel extremely uncomfortable in the work environment and was finally humiliated after being illegally terminated after many years of dedicated service.

34. Considering Ms. Arena's excellent work performance, as exemplified by salary increases and bonuses, her refusal to surrender to Defendant Uffner's advances is the only explanation for his increased hostility towards her and for her termination from the Goldberg Firm.

35. Therefore, the Goldberg Firm unlawfully terminated her on June 24, 2005 in violation of federal, state and city human rights laws.

36. The sexual harassment and retaliatory illegal termination has humiliated Ms. Arena, causing significant emotional and physical distress, for which she is seeking medical treatment.

37. Further, the sexual harassment has caused significant emotional strain on her marriage.

## FIRST CAUSE OF ACTION

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" though "37" with the same force and affect as if separately alleged and reiterated herein.

39. Defendants discriminated and retaliated against plaintiff in violation of Title VII of the Civil Rights Act.

40. As a result, plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" though "37" with the same force and affect as if separately alleged and reiterated herein.

42. Defendants discriminated and retaliated against plaintiff in violation of New York Executive Law § 296, *et. seq.*

43. As a result, plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" though "37" with the same force and affect as if separately alleged and reiterated herein.

45. Defendants discriminated and retaliated against plaintiff in violation of New York City Administrative Code § 8-502(a), *et. seq.*

46. As a result, plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(i) On the First Cause of Action, actual damages to be determined at trial, but in no event less than $250,000;

(ii) On the Second Cause of Action, actual damages to be determined at trial, but in no event less than $250,000;

(iii) On the Third Cause of Action, actual damages in an amount to be determined at trial, but in no event less than $250,000 and punitive damages to be determined at trial, but no less that $250,000;

(iv) Statutory attorney's fees pursuant to NYC Administrative Code § 8-502(a);

(v) Disbursements and other costs; and

(vi) For such other and further relief which the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:    New York, New York
          May 8, 2006

                                                          _____
                                                          Walker G. Harman, Jr.
                                                          Law Offices of Walker G. Harman, Jr.
                                                          20 Exchange Place, 43rd Floor
                                                          New York, New York 10005
                                                          (212) 425-2600


To:   Andrew A. Albstein, Esq.
        Managing Partner
        Goldberg, Weprin & Ustin LLP
        1501 Broadway,  22nd Floor
        New York, New York 10036